# Complaint Exhibit 1

| | | |
|---|---|---|
| IN RE: InterCoast Career Institute<br>South Portland & Kittery, ME | ) ) ) ) ) | CONSENT AGREEMENT<br>REGARDING CERTIFICATE<br>OF APPROVAL OF LPN<br>PROGRAM |

## INTRODUCTION

This document is a Consent Agreement that concerns the certificate of approval for the Practical Nursing Programs (LPN) of InterCoast Career Institute (ICCI) located in Kittery and South Portland, Maine. The parties to this Agreement are ICCI, the Maine State Board of Nursing ("Board") and the Office of the Attorney General, State of Maine. The parties enter into this Agreement pursuant to 32 M.R.S. § 2105-A (1-A) (B) and § 8003(5) (B).

## FACTS

1. Title 32 M.R.S. § 2101 provides that the Board "is the state regulatory agency charged with protection of the public health and welfare in the area of nursing service."

2. Title 32 M.R.S. §§2104 and 2153-A provide the Board with broad authority to evaluate and regulate nursing educational programs offered within the State of Maine. Section 2104(1) requires that any institution that intends to conduct "a nursing education program to prepare professional or practical nurses must apply to the board and submit evidence that:"

   A. It is prepared to carry out the prescribed professional nursing curriculum or the prescribed curriculum for practical nursing, as the case may be; and

   B. It is prepared to meet other standards as established by this chapter and by the board.

Section 2104(2) requires that the executive director of the Board or "other authorized appointee of the board" conduct a survey of any proposed nursing education program and submit a written report to the Board for approval or non-approval of the program. In addition, section 2104(2) imposes a duty upon the Board to from "time to time as determined necessary ... survey all nursing educational programs in the State." Finally, section 2104(2) requires the Board to take action upon receipt of a negative survey report:

   If the board determines that an approved nursing education program is not maintaining the standards required by statute and by the board, notice in writing specifying the defect or defects must be immediately given to the institution conducting the program. If a program fails to correct these conditions to the satisfaction of the board within a reasonable time, the board shall take appropriate action pursuant to section 2153.

Section 2153-A provides the Board with the authority to set curricula and standards for nursing educational programs; conduct surveys of nursing educational programs; approve nursing educational programs; and deny or withdraw approval of nursing educational programs. The following subsections of section 2153-A provide:

   3. **Curricula.** [The Board] [m]ay prescribe curricula and standards for educational programs preparing individuals for licensure under this chapter.



    4. **Surveys.** [The Board] [m]ay provide for surveys of the programs described in subsection 3 as it determines necessary.

    5. **Approval.** [The Board] [m]ay approve such nursing educational programs within the State as meet the requirements of this chapter and of the board;

    6. **Denial.** [The Board] [m]ay place nursing educational programs on probation, or warn, or deny, condition, withdraw or discontinue approval from nursing educational programs for failure to meet approved curricula or other standards as established by this chapter or pursuant to law.

3. Title 32 M.R.S. § 2153-A (1) gives the Board broad authority to adopt rules, as it considers expedient, "for the transaction of the business of the board and the government and management of its affairs."

4. Board Rule Chapter 7 outlines the process for the approval/withdrawal of approval of nursing educational programs. In general, this process involves the initial development of a program and submission of evidence to the Board regarding the proposed program; an initial application to the Board for approval to initiate a nursing educational program; and continuing approval of a nursing educational program based upon written reports following site visits (surveys). In addition, Chapter 7 establishes the criteria each nursing educational program must meet for approval by the Board. The criteria include minimum standards for administration, faculty, students, curriculum, resources (facilities and services), records (reports and bulletins), and evaluation of the program.

5. ICCI is an entity that is incorporated in the State of California, and which owns and operates an educational facility for aspiring practical nurses (LPNs). The Board initially approved ICCI to conduct a nursing educational program to prepare practical nurses for examination and licensure on June 3-4, 2009. At that time, the Board declined to provide full approval to ICCI's LPN educational program as a result of concerns identified during visits by designated Board members of clinical sites used by ICCI. On September 1, 2010, the Board reviewed subsequent site visit reports and voted to grant ICCI full approval of ICCI's practical nursing program.

6. On February 17, 2012, the Board received a letter from Cynthia S. Brodie, MS/RN, Esquire indicating that she was no longer the Program Director for ICCI's practical nursing program. According to that letter, Doreen Hunt, BSN/MSN/RN would be acting as the Interim Director for ICCI.

7. On July 20, 2012, the Board received two anonymous complaints regarding ICCI, each alleging issues with its practical nursing program. On July 30, 2012, the Board sent copies of the complaints to Doreen Hunt, RN, Interim Director for ICCI, and requested a written response.

8. On July 9 - 27, 2012, Board members Susan Baltrus, MSN/RN and Margaret Hourigan, RN/EdD and Board staffer Virginia deLorimier, MSN/RN conducted telephonic interviews of staff at the clinical sites affiliated with ICCI's practical nursing program. In general, they found that all clinical sites affiliated with ICCI reported minimal paperwork (no syllabi or possibly one that is outdated), few contracts, rarely a skills checklist, and sometimes students and faculty just showing up for a new rotation without prior notice.

9. On August 10, 2012, the Board received a written response from ICCI Interim Director Doreen Hunt to the two anonymous complaints. In its response, ICCI denied any issues with its practical nursing program and asserted that its application process was rigorous and its testing process monitored. ICCI asserted that it was committed to the integrity of the academic experience for its students.

10. On August 12, 2012, the Board received a letter from Cynthia Brodie, Corporate Director of Nursing Education for ICCI, notifying the Board that Cynthia Lamontagne, BSN/MSN/RN had been appointed

Nursing Program Director at ICCI based in Kittery, Maine. In addition, that letter indicated that Doreen Hunt would resume her responsibilities as the Assistant Nursing Program Director at the South Portland location. According to Ms. Brodie, this change in the "plan of leadership will increase the level of student and faculty satisfaction, ensure optimal operational program standards and meet the standards set by the Maine Nurse Practice Act."

11. On August 21, 2012, the Executive Director for the Board sent a letter to Cynthia Lamontagne, Director of the Nursing Program for ICCI, together with information gathered during the interviews of staff at the clinical sites affiliated with ICCI's practical nursing program in July 2012, and requested a written response to the concerns raised by that information.

12. On August 22, 2012, the Executive Director for the Board sent a letter to Cynthia Lamontagne, Director of the Nursing Program for ICCI, together with memoranda of conversations between Board staffer Virginia deLorimier and an instructor (Instructor A) for ICCI's LPN program, and requested a written response to the concerns raised by that information, which included:

- Information regarding 4th term LPN students' clinical rotation at South Ridge Living and Rehabilitation.
- Students were in the lounge watching television and doing crossword puzzles during a time they were supposed to be on the unit.
- Instructor A's opinion that the students were immature and unprofessional and would not accept responsibility for their actions.
- Instructor A gave all of the students a zero for the day and e-mailed the grades to ICCI administration.
- All of the students left early one day and met with the Director of Nursing (DON) at ICCI, about the zero grades issued by Instructor A. Instructor A was not invited or present at this meeting.
- Instructor A asked the DON what happened during the meeting and the DON indicated that it was her role to "hear both sides."
- After this meeting, there was an ICCI staff meeting at which Instructor A was not present because she was not made aware of it beforehand.
- Instructor A stated that nothing was going to happen to the students to whom she issued zero grades when they pay $35,000 a year to attend ICCI's LPN program.
- Several of the students have been making negative comments regarding the Instructor A on the internet.
- Following Instructor A's discussion of this matter with the Executive Director of the Board, she called and spoke with Cynthia Brodie, Corporate Director of Nursing Education for ICCI. Instructor A then e-mailed the student evaluations and grades to Ms. Brodie.
- ICCI has made several position changes since Instructor A has worked for them. The changes were never communicated to the instructors and Instructor A had to ask more than once to whom she was supposed to report when the changes occurred.
- ICCI provided proctored exams to prepare students to take the NCLEX, the national licensing exam. The exams are supposed to mimic the conditions students would face when taking the NCLEX and is supposed to be proctored by two instructors. On August 1, 2012, Instructor A proctored this exam by herself. Another faculty member was supposed to be remotely proctoring this exam as well, but she was also simultaneously teaching a class. One student hit a "back" button on the computer and wiped out the screen. Instructor A called the other faculty member to fix the issue, but the other faculty member was tied up teaching another student and could not immediately do so. The student left the exam in a huff (even though she was not supposed to). After the other faculty member had fixed the computer issue, she asked where the student was and Instructor A told her that the student had left. Instructor A stated that while proctoring the exam, she had no control over the students: they talked,



Case 2:17-cv-00331-JAW   Document 1-1   Filed 08/29/17   Page 4 of 7   PageID #: 38
InterCoast Career Institute -- Consent Agreement Regarding Certificate of Approval of LPN Program
Page 4 of 7

passed notes, and came and left as they pleased. The other faculty member located the student who had left and brought her back to continue with the proctored exam.

13. On September 4, 2012, the Board received a letter dated August 29, 2012 from Cynthia Brodie, Corporate Director of Nursing Education for ICCI, regarding the inspections and interviews of staff at the clinical sites affiliated with ICCI's practical nursing program in July 2012. In that letter, Ms. Brodie indicated that the "concerns expressed by our clinical affiliates are justifiable and can be explained but not excused; they will be addressed by administration." Ms. Brodie also indicated that she would attend the Board meeting on September 18, 2012 to provide what information she had available.

14. On September 4, 2012, the Board also received a letter dated August 31, 2012 from Cynthia Brodie, Corporate Director of Nursing Education for ICCI, regarding the information provided to the Board staff by Instructor A, RN, an instructor for ICCI's LPN program. In that letter, Ms. Brodie stated that "[Instructor A] is an exceptional clinical faculty member for whom I have a great deal of respect; she is an experienced nurse and well-respected by faculty and students." Ms. Brodie also indicated that she would be meeting with "nursing administration" during the next week to gather more information and expected to have input into "InterCoast's response and action plan."

15. On September 18, 2012, the Board met with Ms. Brodie and Ms. Kelly Michaud regarding the issues identified above. Following this meeting, the Board voted to offer ICCI a consent agreement in order to place ICCI's LPN education program on "probationary" status in accordance with 32 M.R.S. § 2153-A(6).

16. Following the Board's meeting on September 18, 2012, the Board's assigned legal counsel and ICCI's legal counsel engaged in discussions and negotiations regarding ICCI's LPN program and the effects of "probationary" status would have upon ICCI's ability to obtain "candidacy" status and accreditation through the National League for Nursing Accrediting Commission (NLNAC).

17. This Consent Agreement has been negotiated by and between the Board's assigned legal counsel and the legal counsel for ICCI in order to resolve this matter without further proceedings. Absent the Board's ratification of this Consent Agreement, the matter shall be investigated further in anticipation of a formal adjudicatory hearing.

## COVENANTS

18. ICCI has furnished documentation to the Board concerning corrective actions that ICCI has reported it has taken to respond to the concerns noted by the Board. ICCI acknowledges that the Board has the discretion to place its LPN educational program on probationary status as a result of the information described in paragraphs 1-16 above, which involve concerns regard-ing the oversight of faculty and students, the relationships between ICCI and the clinical sites, and an apparent lack of structure or enforcement of structure. ICCI admits that such information violates the following sections and subsections of Board Rule Chapter 7:

   a. Section 4: Administration; Subsection (f) Nurse administrators shall be responsible for:

      ii. creation and maintenance of an environment conducive to teaching, learning, scholarly pursuits, and the sharing of faculty expertise through involvement in professional and community activities;

      v. facilitation of faculty development and performance review; and

      vi. recommendation of faculty appointment, promotion, tenure and retention.



Case 2:17-cv-00331-JAW Document 1-1 Filed 08/29/17 Page 5 of 7 PageID #: 39
InterCoast Career Institute -- Consent Agreement Regarding Certificate of Approval of LPN Program
Page 5 of 7

b. Section 5: Faculty; Subsection (f) Faculty shall be responsible for the following:

  i. development, implementation and evaluation of the purpose, philosophy and objectives of the nursing program(s);

  ii. design, implementation and evaluation of the curriculum;

  iii. development and evaluation of student admission, progression, retention and graduation policies within the framework of graduation policies within the framework of the policies of the governing institution; and

  iv. participation in academic advising and guidance of students;

  v. evaluation of student achievement in terms of curricular objectives;

  vi. participation in the selection, promotion and tenure of faculty; and

  vii. provision for student and peer evaluation of teaching effectiveness.

c. Section 5: Faculty; Subsection (g) Personnel Policies. There shall be written personnel policies which promote the stability and retention of faculty. Job functions and responsibilities shall be defined in writing.

d. Section 8: Resources, Facilities and Services; Subsection (d). Appropriate written agreements with cooperating agencies shall be developed, maintained and mutually reviewed.

e. Section 10: Evaluation of the Program. Evaluation is a planned, ongoing activity directed toward the improvement of the program.

  a. The faculty shall be responsible for determining and developing the methods and procedures to be used in measuring the extent to which the objectives of the program have been achieved and the philosophy is reflected.

  b. The results of the self-appraisal shall be the basis for future action by the faculty in designing program improvement.

  c. There shall be evidence that consideration has been given to incorporating the opinions of nursing administration, faculty, students, graduates and employers in the total evaluation process.

19. <u>Candidacy Status and Accreditation by the NLNAC.</u> In light of the acknowledgment in paragraph 18 above, and in lieu of probationary status, ICCI agrees and understands that upon the execution of this Consent Agreement, its LPN educational program shall:

  a. Obtain "candidacy" status by the National League for Nursing Accrediting Commission (NLNAC) within twelve (12) months following the execution of this Consent Agreement;

  b. Obtain accreditation of its LPN program by the National League for Nursing Accrediting Commission (NLNAC) within eighteen (18) months of achieving candidacy status; and

  c. After achieving accreditation, maintain accreditation of its LPN program by the National League for Nursing Accrediting Commission (NLNAC).



Case 2:17-cv-00331-JAW Document 1-1 Filed 08/29/17 Page 6 of 7 PageID #: 40
InterCoast Career Institute -- Consent Agreement Regarding Certificate of Approval of LPN Program
Page 6 of 7

ICCI shall be solely responsible for the coordination of and all costs associated with meeting the foregoing requirements as well as any costs associated with achieving and maintaining candidacy and accreditation of ICCI's LPN program by the National League for Nursing Accrediting Commission (NLNAC).

20. <u>Failure to Obtain Candidacy Status and Accreditation by the NLNAC.</u> ICCI understands and agrees that its failure to obtain candidacy status and accreditation by the NLNAC within the specific time frames established in paragraph 19 above, shall result in the automatic revocation, without hearing or judicial review or appeal, of its certificate of approval for all of ICCI's LPN programs in the State of Maine <u>unless:</u>

   a. Prior to the expiration of the specific time frames established in paragraph 19 above, ICCI notifies the Board in writing of circumstances – not the result of ICCI's action or inaction – that may lead to ICCI's failure to obtain candidacy status and accreditation by the NLNAC within the specific time frames established in paragraph 19 above; and

   b. The Board in its sole discretion determines that ICCI's failure to obtain candidacy status and accreditation by the NLNAC within the specific time frames established in paragraph 19 above was not the result of any action or inaction by ICCI. Any determination by the Board regarding this issue does not require an adjudicatory hearing and is not subject to judicial review or appeal.

   If the Board, in its sole discretion, agrees to extend the time frames established in paragraph 19 above, it may offer a written amendment to this Consent Agreement to accomplish that purpose.

21. <u>ICCI Reports to the Board.</u> ICCI agrees and understands that it will comply with the following specific reporting requirements:

   c. ICCI shall provide the Board with the pass rates of each LPN class;

   d. ICCI shall provide the Board with written quarterly reports detailing the progress it is making towards acquiring candidacy status and accreditation by the National League for Nursing Accrediting Commission (NLNAC);

   e. ICCI shall provide the Board with the credentials and the date of hire for all faculty; and

   f. ICCI shall provide the Board with an organizational chart depicting the current relationships of authority and responsibility and channels of communication.

22. <u>ICCI Cooperation with the Board.</u> In accordance with 32 M.R.S. §§ 2104 and 2153-A, ICCI agrees to:

   a. Submit its LPN programs to random site inspections by the Board or its agent(s);

   b. Cooperate with the Board or its agent(s) during any random site inspections of its LPN programs;

   c. Permit its faculty and students to be interviewed by the Board or its agent(s) during any random site inspection and/or investigation of its LPN programs.

23. Pursuant to 32 M.R.S. § 2153-A (6) and 10 M.R.S. § 8003(5), any violation by ICCI of any of the terms or conditions of this Consent Agreement <u>other than the terms and conditions identified in paragraph 20 above</u>, shall constitute grounds for the Board, following an adjudicatory hearing pursuant to Title 5 M.R.S. Chapter 375, to revoke the Certificate of Approval issued to ICCI for its LPN program.



Case 2:17-cv-00331-JAW   Document 1-1   Filed 08/29/17   Page 7 of 7   PageID #: 41
InterCoast Career Institute – Consent Agreement Regarding Certificate of Approval of LPN Program
Page 7 of 7

24. This Consent Agreement constitutes final, non-appealable action regarding ICCI's Certificate of Approval from the Board to provide an LPN educational program in this State. This Consent Agreement cannot be amended orally. This Consent Agreement may only be amended or rescinded in writing by agreement of all the parties.

25. This Consent Agreement is a public record within the meaning of 1 M.R.S. § 402 and will be available for inspection and copying by the public pursuant to 1 M.R.S. § 408.

26. ICCI understands that it does not have to execute this Consent Agreement and that it has the right to consult with an attorney before entering into this Consent Agreement.

27. For the purposes of this Consent Agreement, the term "execution" shall mean the date on which the final signature is affixed to this Consent Agreement.

I, GEETA BROWN, HAVE READ AND UNDERSTAND THE FOREGOING CONSENT AGREEMENT. I UNDERSTAND THE EFFECT IT WILL HAVE ON ICCI'S CERTIFICATE OF APPROVAL. I UNDERSTAND THAT BY SIGNING IT, ICCI WAIVES CERTAIN RIGHTS. I SIGN IT VOLUNTARILY, KNOWINGLY, AND INTELLIGENTLY AND AGREE THAT ICCI WILL BE BOUND BY THIS AGREEMENT. I UNDERSTAND THAT THIS CONSENT AGREEMENT CONTAINS THE ENTIRE AGREEMENT AND THERE IS NO OTHER AGREEMENT OF ANY KIND.

DATED: 3/4/2013

FOR ICCI
GEETA BROWN
PRESIDENT, ICCI

DATED: 3/7/13

RONALD L. HOLT, ESQ.
ATTORNEY FOR ICCI

FOR THE MAINE STATE
BOARD OF NURSING

DATED: 3/26/13

MARGARET HOURIGAN, RN, EdD, Chair

FOR THE OFFICE OF THE
ATTORNEY GENERAL

DATED: 3/27/13

DENNIS E. SMITH
Assistant Attorney General

Effective Date: 3/27/13