UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

STEPHANIE KOUREMBANAS, et al.,      )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )      No. 2:17-cv-00331-JAW
                                    )
INTERCOAST COLLEGES,                )
                                    )
            Defendant.              )

## ORDER ON MOTION TO COMPEL AND DISMISS

The plaintiffs are four former students who signed enrollment agreements with the defendant, a for-profit college; the enrollment agreements contained arbitration provisions. The students filed a suit against the defendant alleging unfair and deceptive trade practices, breach of contract, fraudulent inducement to contract, as well as intentional and negligent misrepresentation. The defendant moved to compel arbitration and to dismiss the lawsuit, and the plaintiffs responded that the defendant was barred from compelling arbitration, raising certain corporate and contract law defenses. Although disquieted by the result, the Court concludes that Supreme Court and First Circuit authority requires the Court to grant the motion to dismiss and compel arbitration in accordance with the enrollment agreement.

## I.      BACKGROUND

### A.      Procedural History

On August 29, 2017, the Plaintiffs initiated a class action lawsuit against InterCoast Colleges (InterCoast), alleging under various theories that InterCoast engaged in fraud by inducing students to borrow money through federally-funded

financial aid programs to pay for a Licensed Practical Nursing (LPN) program that InterCoast operated in Maine, when the quality of the education in the InterCoast LPN program was deficient and deceptively below its advertised quality. *Class Action Compl.* (ECF No. 1) (*Compl.*). On November 7, 2017, InterCoast moved to compel arbitration and to dismiss the lawsuit. *Def.'s Mot. to Compel Arbitration and Dismiss the Case* (ECF No. 7) (*Def.'s Mot.*).[1] On September 28, 2018, the Plaintiffs filed their response to InterCoast's motion to compel arbitration. *Pls.' Resp. in Opp'n to Def.'s Mot. to Compel Arbitration and Dismiss the Case* (ECF No. 23) (*Pls.' Opp'n*). InterCoast replied on November 15, 2018. *Def.'s Reply to Resp. to Mot. to Compel Arbitration and Dismiss the Case* (ECF No. 32) (*Def.'s Reply*).

On October 3, 2018, the Plaintiffs moved for oral argument, *Mot. for Oral Argument* (ECF No. 24), which the Court granted on November 16, 2018. *Order* (ECF No. 33). On February 4, 2019, the Court held oral argument concerning the pending motion to compel arbitration and to dismiss the case. *Min. Entry* (ECF No. 35).[2]

---

[1] After this filing, on December 6, 2017, the Plaintiffs moved to stay all proceedings and to extend time within which to respond to InterCoast's motion to compel arbitration. *Pls.' Mot. to Stay Proceedings and for Extension of Time to File Opp'n to Mot. to Compel Arbitration* (ECF No. 14). On December 12, 2017, InterCoast responded to the Plaintiffs' motion to stay and extend time. *Def.'s Opp'n to Pls.' Mot. to Stay Proceedings and for Extension of Time to File Opp'n to Mot. to Compel Arbitration* (ECF No. 17). On December 15, 2017, the Plaintiffs filed a reply. *Pls.' Reply to Def.'s Opp'n to Mot. to Stay Proceedings and for Extension of Time to File Opp'n to Mot. to Compel Arbitration* (ECF No. 18). On August 27, 2018, the Court denied the Plaintiff's motion to stay but granted Plaintiffs' motion to extend time to respond to InterCoast's motion to compel arbitration. *Order on Mot. to Stay and Mot. to Extend Time to Respond to Def.'s Mot. to Compel Arbitration* (ECF No. 19).

[2] At oral argument, having thoroughly briefed a series of complicated issues under the Higher Education Act (HEA), the Plaintiffs conceded that the HEA provides for no private right of action, and that they could not enforce the Borrower Defense Regulations. The Plaintiffs acknowledged that only the Department of Education may enforce HEA regulations against entities like InterCoast. Therefore, the Court will not address the parties' respective arguments concerning the effect of the Borrower Defense Regulations on the pending motion.

## B.  Factual Background[3]

InterCoast operates for-profit programs in several jurisdictions across the United States; most in California. *Compl.* ¶ 24. From approximately October 2005 until early March 2016, InterCoast operated practical nursing education programs in Maine (InterCoast LPN Program). *Id.* ¶ 25. Students who enrolled in the InterCoast LPN Program signed an enrollment agreement entitled "InterCoast Career Enrollment Agreement" (the Enrollment Agreement). *Def.'s Mot.* Attach. 1. *Decl. of Kelly Michaud*, ¶ 7 (ECF No. 7) (*Kelly Michaud Decl.*). Each Enrollment Agreement contained a provision requiring arbitration of disputes between the student and InterCoast. *Id.* The Plaintiffs—Stephanie Kourembanas, Caridad Jean Baptiste, Cathy Mande, and Catharine Valley—all enrolled in the InterCoast LPN Program. *Compl.* ¶¶ 1-5. Each Plaintiff signed the InterCoast Enrollment Agreement. *Kelly Michaud Decl.* ¶¶ 10, 15, 20, 29; *Def.'s Mot.* Attachs. 2-6 (ECF No. 7) (*Pls.' Enrollment Agreements*).

The signed Enrollment Agreements provide:

> Any dispute arising from enrollment at InterCoast Career Institute, other than grades and no matter how described, pleaded, or styled, shall be resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association ('AAA'), under its Commercial Rules. The award rendered by the arbitration may be entered in any court having jurisdiction. This provision incorporates the Arbitration provision found elsewhere in InterCoast Career Institute enrollment materials.

---

[3]    In deciding a motion to compel arbitration, the Court may consider facts alleged in the complaint as well as the arbitration agreement documents the parties submitted in connection with the motion. *See Soto v. State Indus. Prods., Inc.*, 642 F.3d 67, 72 n.2 (1st Cir. 2011) (a motion to compel arbitration is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, and is not controlled by Federal Rules of Civil Procedure 12(b)(6) or 12(c)).

*Kelly Michaud Decl.* ¶¶ 11, 16, 20, 25, 30; *Pls.' Enrollment Agreements.*  Immediately after this language, above the student's signature line, the Enrollment Agreement states:

> I understand that this is a legally binding contract. My signature below certifies that I have read, understood, and agreed to my rights and responsibilities, and that the institution's cancellation and refund policies have been clearly explained to me.
>
> Your signature below on this agreement acknowledges that you have been given reasonable time to read and understand this document . . ..

*Kelly Michaud Decl.* ¶¶ 12, 17, 22, 26, 31; *Pls.' Enrollment Agreements.*  In the Enrollment Agreements, the Plaintiffs signed on the line above "Signature of Student" and initialed each page of the Enrollment Agreement. *Kelly Michaud Decl.* ¶¶ 13, 18, 27, 32; *Pls.' Enrollment Agreements.*

## II.    POSITIONS OF THE PARTIES

### A.    InterCoast's Motion

InterCoast argues that the Enrollment Agreements are covered under the Federal Arbitration Act (FAA) and that the Court should compel arbitration because: (1) there is an enforceable written agreement to arbitrate; (2) the disputed issues between InterCoast and the Plaintiffs fall within the scope of the arbitration agreement; and (3) InterCoast has not waived its right to arbitrate these disputed issues. *Def.'s Mot.* at 4-7.

InterCoast says that when each Plaintiff reviewed, signed, and initialed the Enrollment Agreement, they "entered into a contract which contained an agreement to arbitrate 'any dispute arising from enrollment, other than grades and no matter

4

how described, pleaded, or styled.'" *Id.* at 5 (quoting *Kelly Michaud Decl.* ¶¶ 11, 16, 20, 25, 30 and exhibits A-E thereto). InterCoast maintains that courts generally apply basic principles of contract law to arbitration agreements and interpret these agreements as creating "a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (quoting *United States v. Consigli Constr. Co.*, 873 F. Supp. 2d 409, 412 (D. Me. 2012) (internal quotation marks omitted)). InterCoast maintains that "[t]here is nothing to mandate revocation of the contracts" because the Enrollment Agreements set forth and explained InterCoast's policies, the arbitration clauses were conspicuous, and Maine law favors the enforcement of arbitration provisions. *Id.* at 5-6.

As to the second point, InterCoast argues the issues in this case fall within the arbitration agreement since the clause is broadly worded in stating "[a]ny dispute arising from enrollment at InterCoast Career Institute, other than grades and no matter how described, pleaded, or styled." *Id.* at 6. Because the Complaint asserts claims not relating to grades the Plaintiffs received but alleges unfair trade practices, breach of contract, and torts, InterCoast says their claims fall within the scope of the arbitration clause. *Id.* at 7. InterCoast points to *Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 148 (1st Cir. 1998), and contends that *Bercovitch* is factually similar to this case and the First Circuit's analysis in *Bercovitch* "is instructive." *Id.* Lastly, InterCoast asserts that it has not waived its right to arbitrate and that the Plaintiffs do not assert otherwise. *Id.* at 8. InterCoast argues consequently that because the

issues before the Court are arbitrable, the Court should dismiss the case and that dismissal is advantageous on various grounds. *Id.* (citing *Boulet v. Bangor Sec. Inc.*, 324 F. Supp. 2d 120, 127 (D. Me. 2004) (quoting *Bangor Hydro-Electric Co. v. New England Tel. and Tel. Co.*, 62 F. Supp. 2d 152, 161 n.9 (D. Me. 1999))).

### B. Plaintiffs' Opposition

After complaining that the arbitration clauses were untitled and in fine print, the Plaintiffs acknowledge that each individual Plaintiff executed an Enrollment Agreement with "InterCoast Career Institute" (ICCI), which contained an arbitration clause. *Pls.' Opp'n* at 1-2. The Plaintiffs say the issue is not whether they signed the Enrollment Agreements but whether the arbitration clauses within the Enrollment Agreements are enforceable. *Id.* at 2. The Plaintiffs argue the Court should deny InterCoast's motion to compel arbitration and dismiss the case, because (1) the arbitration clauses are not enforceable as ICCI "is not a legally organized entity and lacked any capacity to contract with the Plaintiffs;" and (2) the arbitration clauses are unconscionable. *Id.* At oral argument, the Plaintiffs also asserted InterCoast engaged in fraud and fraudulently induced them to enter their Enrollment Agreements.

The Plaintiffs claim that the arbitration provisions in their Enrollment Agreements "are unenforceable under common law principles of corporate and contract law." *Id.* at 6. Specifically, the Plaintiffs aver that the arbitration clauses are not enforceable because "[t]here is no evidence that either InterCoast Career Institute or the entity for which it claims to have been a d/b/a, InterCoast Colleges []

ever has been validly organized as a corporation" and consequently, InterCoast "is not a legal entity capable of enforcing rights under a contract it purports to have entered with Plaintiffs." *Id.* at 7 (internal quotations omitted). The Plaintiffs contend that in its Corporate Disclosure Statement (ECF No. 13) (*Corporate Disclosure I*), InterCoast claims that it is a corporation and that "its stock is owned by Inter-Coast International Training, Inc." *Id.* at 6.

However, the Plaintiffs argue "[t]his representation is at odds with the corporate disclosure statements that [InterCoast]" filed previously in this Court. *Id.* (internal quotation marks omitted) (citing *Mason v. InterCoast Career Institute*, 2:14-cv-0377-JAW and *Perez-Webber* v. *InterCoast Career Institute*, 2:16-cv-0196-JAW). The Plaintiffs contend that in *Mason*, Geeta Brown, the CEO, Secretary, CFO, and President of Inter-Coast International Training, Inc., made false representations to this Court. *Id.* at 7 n.8. The Plaintiffs say "[t]here is no evidence in the public record that InterCoast Colleges or ICCI ever was organized as a corporation in California, as Ms. Brown represents." *Id.* The Plaintiffs argue that InterCoast engaged in a "shell game" and that it will likely "have to seek to amend their complaint to name both Inter-Coast International Training, Inc. and Ms. Brown personally as defendants in this action." *Id.* At oral argument, the Plaintiffs represented that InterCoast had not started using its d/b/a InterCoast Colleges until 2017, years after the Enrollment Agreements were formalized.

Lastly, the Plaintiffs contend that the arbitration clauses are unconscionable. *Id.* at 8. The Plaintiffs claim "[t]he issue of whether a valid arbitration agreement

exists 'is to be decided with reference to state contract law principles.'" *Id.* (quoting *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 19 (1st Cir. 1999)).  Under Maine law, the Plaintiffs assert, the central issue is whether there was a mutual understanding by both parties to arbitrate.  *Id.* (emphasis omitted) (citing *Roy v. Davis*, 553 A.2d 663, 664 (Me. 1989)).  The Plaintiffs maintain that the arbitration clauses do not contain the necessary material terms or "the rights [the Plaintiffs] purportedly waived []" or reasonably communicate the material terms encompassed within the clause.  *Id.* at 8-9.  The Plaintiffs also argue that the arbitration clauses are not conspicuous, which suggests that InterCoast sought "to deceive and mislead students into waiving their rights without understanding material terms." *Id.* at 9.  According to the Plaintiffs, because InterCoast's "motion to dismiss the case rests on the fate of its motion to compel," which they say the Court should deny, the Court should similarly deny InterCoast's motion to dismiss.  *Id.* at 10.

## C.    InterCoast's Reply

InterCoast asserts "[t]he fact that the Enrollment Agreements were signed under Defendant's trade name [InterCoast Career Institute] instead of its corporate name [Inter-Coast International Training, Inc] does not render the Enrollment Agreements and their arbitration provisions invalid." *Def.'s Reply* at 7 (citing *Pickering v. Urbantus, LLC*, 827 F. Supp. 2d 1010, 1015-16 (S.D. Iowa 2011)). InterCoast contends that the Plaintiffs clearly understood this difference and it points to the fact that the Plaintiffs "affirmatively allege . . . that they each entered

into a contract—i.e., their respective Enrollment Agreements—with the InterCoast corporate entity []" to support this contention. *Id.* at 8.

InterCoast is also unconvinced by the Plaintiffs' unconscionability argument because, as InterCoast sees it, the argument stems from the lack of "special notice" in the arbitration clause, but they cite no Maine caselaw to support this requirement. *Id.* at 9. InterCoast points to *Champagne v. Victory Homes, Inc.*, 2006 ME 58, 897 A.2d 803, where the Law Court found the arbitration clause unambiguous and that it required binding arbitration; the *Champagne* arbitration clause provided that "[a]ny dispute or claim arising out of this agreement or the property addressed in this agreement shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association." *Id.* ¶ 3. InterCoast says its arbitration language is "nearly identical," and so the Court should grant its motion to compel arbitration. *Def.'s Reply* at 10.

## III. LEGAL STANDARD

The FAA, 9 U.S.C. §§ 1 *et seq.*, provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. The FAA embodies a "liberal federal policy favoring arbitration agreements." *Foss v. Circuit City Stores, Inc.*, 477 F. Supp. 2d 230, 232-33 (D. Me. 2007) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Campbell v. General Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 551 (1st Cir. 2005)).

Maine has an analogous statute, the Maine Uniform Arbitration Act, 14 M.R.S. §§ 5927-49, which Maine courts have interpreted in a fashion similar to federal court interpretations of the FAA. The Maine Uniform Arbitration Act applies "where there is '[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties.'" *J.M. Huber Corp. v. Main-Erbauer, Inc.*, 493 A.2d 1048, 1050 (Me. 1985) (quoting § 5927).

"To compel arbitration, the movant must demonstrate 'that a valid agreement to arbitrate exists, that [he] is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" *Patton v. Johnson*, No. 18-1750, 2019 U.S. App. LEXIS 4058, at *8-9, 2019 WL 516534, at *4 (1st Cir. Feb. 11, 2019) (quoting *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003)). "When deciding whether the parties agreed under the FAA to arbitrate a certain matter, courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 42 (1st Cir. 2012) (internal quotation marks omitted) (quoting *Rosenberg*, 170 F.3d at 19). This means that common contract defenses "like fraud, duress, or unconscionability" are applicable. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Under Maine law:

> A contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party.

*Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 4 (quoting *Sullivan v. Porter*, 861 A.2d 625, 631 (Me. 2004)).

## IV.  DISCUSSION

Applying the four First Circuit criteria in *Patton* for determining whether to compel arbitration, the arbitration clauses in the Plaintiffs' Enrollment Agreements appear on their face to meet the First Circuit's requirements.  Each Enrollment Agreement contains a "valid agreement to arbitrate." *Patton*, 2019 U.S. App. LEXIS 4058, at *8, 2019 WL 516534, at *4.  As a party to the agreement, InterCoast is "entitled to invoke the arbitration clause." *Id*.  The students are also signatories to the Enrollment Agreement, including the arbitration clause, and are therefore bound to the terms of the contract. *Patton*, 2019 U.S. App. LEXIS 4058, at *8-9, 2019 WL 516534, at *4.  Finally, the terms of the arbitration clause are broad enough to encompass the dispute between the students and the school. *Patton*, 2019 U.S. App. LEXIS 4058, at *9; 2019 WL 516534, at *4.  There is no evidence in the record that InterCoast waived its right to proceed to arbitration. *Gove*, 689 F.3d at 4.

The Plaintiffs raise three arguments challenging InterCoast's ability to enforce the arbitration clauses contained in their Enrollment Agreements.  The Plaintiffs claim: (1) InterCoast engaged in fraud and fraudulently induced them to enter their Enrollment Agreements; (2) the Enrollment Agreements are not enforceable because the Plaintiffs entered into the Enrollment Agreements with "InterCoast Career Institute", which is a d/b/a of InterCoast Colleges which, in turn, is owned by Inter-Coast International Training, Inc., and which was not previously registered as a d/b/a

in Maine; (3) the arbitration clauses are unconscionable.

The Court concludes that the Plaintiffs' first argument must be decided by an arbitrator because it concerns the validity of the Enrollment Agreements as a whole, as opposed to the existence of the Enrollment Agreement itself or the validity of the arbitration clauses specifically. As to the latter two arguments, the Court concludes as a matter of law, a nonregistered legal entity may enforce a contract and the arbitration clauses are not unconscionable.

### A.     Existence of Enrollment Agreements and the Validity of the Agreements to Arbitrate

"In deciding whether an agreement to arbitrate is to be enforced, we normally apply ordinary state-law principles that govern the formation of contracts, including validity, revocability, and enforceability of contracts." *Bezio v. Draeger*, 737 F.3d 819, 822–23 (1st Cir. 2013). "Deciding whether the parties agreed to arbitrate a dispute about the validity of the underlying agreement requires the Court to walk the fine line between issues of contract *formation* that it is required to decide and issues of contract *interpretation* that it must leave to the arbitrator." *Local Union 1253, Int'l Bhd. of Elec. Workers, AFL-CIO v. S/L Const., Inc.*, 217 F. Supp. 2d 125, 133 (D. Me. 2002) (emphasis in original). The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (quoting *First Options of Chi., Inc., v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Patton*, 2019 U.S. App. LEXIS 4058, at *12, 2019 WL 516534, at *5.

In *Prima Paint Corporation v. Flood & Conklin Manufacturing Company*, 388 U.S. 395 (1967), the United States Supreme Court differentiated between challenges to the validity of the entire contract and challenges only to the existence of an agreement to arbitrate within the contract. *Id.* at 403-04. Before *Prima Paint*, Circuit Court of Appeals were divided as to whether "a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." *Id.* at 402. The Supreme Court considered the Court of Appeals for the Second Circuit approach, where unless parties intended otherwise, arbitration clauses were "separable" from the larger contract if there was no claim of fraud to the arbitration clause itself and if the claim of fraud in the inducement was within the scope of the arbitration clause. *Id.* (citation omitted). The Supreme Court also considered the Court of Appeals for the First Circuit's approach, which, in contrast to the Second Circuit, took "the view that the question of 'severability' is one of state law, and that where a State regards such a clause as inseparable a claim of fraud in the inducement must be decided by the court." *Id.* at 402-03.

Based on its reading of the text of the FAA, the *Prima Paint* Court sided with the Second Circuit. *Id.* at 403-404. The *Prima Paint* Court concluded:

> [I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Id.* (citations omitted); *see also Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("[B]ecause § 2 states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' without mention of the validity of the contract in which it is contained . . . a party's challenge to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate"); *Consigli Const. Co.*, 873 F. Supp. 2d at 415 (citation omitted) ("The separability doctrine as developed in *Prima Paint* and *Rent–A–Center* requires arbitration unless the objecting party can demonstrate that the arbitration clause itself was either fraudulently induced or unconscionable"); *Sleeper Farms v. Agway, Inc.*, 211 F. Supp. 2d 197, 200 (D. Me. 2002), *aff'd*, 506 F.3d 98 (1st Cir. 2007) (addressing arguments concerning the "*existence*" of the contract and whether the arbitration clause in dispute was fraudulently induced or unconscionable but leaving whether a contract was "illegal, unconscionable or fraudulently induced" to the arbitrator because those questions deal with "the *validity* of the contract as a whole") (emphasis in original); *Stenzel v. Dell, Inc.*, 2005 ME 37, ¶ 15, 870 A.2d 133 (rejecting defendant's argument that the lower court improperly considered the plaintiffs' claim that arbitration clause was illusory under *Prima Paint* because plaintiffs' claim targeted the clause itself "even though the question necessarily blends into the larger question of whether the entire agreement is illusory").

Here, the Plaintiffs claim InterCoast engaged in fraud in its representations of its corporate existence and it fraudulently induced them to enter their Enrollment Agreements:

InterCoast, to induce Plaintiffs to enter into contracts to enroll in the InterCoast LPN Program, made positive statements of fact regarding the quality and content of the education it would provide, and the accreditation status of the program, that were false, material to the contract, and relied upon by Plaintiffs in deciding to enroll [and] InterCoast knew that its statements regarding the quality and content of the education it promised to provide to Plaintiffs, and the program's accreditation status, were false at the time they were made and did not intend to satisfy the statements at the time they were made.

*Compl.* ¶¶ 123-24. At oral argument, the Plaintiffs claimed that InterCoast was "hiding the ball" as to its corporate identity. Because the Plaintiffs' allegations of fraud pertain to the contract as a whole, not the arbitration clause specifically, whether InterCoast fraudulently induced the Plaintiffs into entering the contracts is for an arbitrator to decide. *Rent-A-Ctr.*, 561 U.S. at 71 ("[Even] where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene"); *Dialysis Access Center, LLC., v. RMS Lifeline, Inc.*, 638 F.3d 367, 380-82 (1st Cir. 2011) (concluding that "any dispute" within agreement at issue was sufficiently broad in scope to include party's fraudulent inducement claim); *Irwin v Pinetree Ret. Planning*, No. cv-10-645, 2011 WL 2423365 (Me. Super. Apr. 28, 2011) ("[T]he plaintiffs' claim for fraud in the inducement of the Agreement as a whole does not prevent the action from being submitted to an arbitrator").

The Enrollment Agreements' arbitration clauses provide, "[a]ny dispute arising from enrollment at InterCoast Career Institute, other than grades and no matter how described, pleaded, or styled, shall be resolved by binding arbitration

under the Federal Arbitration Act . . . ." *Pls.' Enrollment Agreements* at 5-6. The Plaintiffs have not otherwise argued that the clause is ambiguous as to whether it covers their claims or that their claims falls outside its scope. Accordingly, because the Plaintiffs' claim of fraudulent inducement concerns the validity of the contract in its entirety, this is a question for an arbitrator, not this Court, to determine. *See Buckeye Check Cashing, Inc., v. Cardegna*, 546 U.S. 440, 446 (2006).

**B.    Existence of the Enrollment Agreements and Unconscionability**

In contrast to the Plaintiffs' first argument, the Plaintiffs' two remaining arguments are proper for this Court to resolve because one questions the existence of the contract itself and the other contends the arbitration clause is unconscionable.

**1.    Nonregistered Legal Entity and Enforceability of Contracts**

Whether an unregistered entity, which serves as a d/b/a of registered and incorporated corporation, may enforce a contract concerns whether there was the requisite mutual assent necessary for a contract to be formed. Although there is limited authority on this question, the Court concludes that under Maine law an unregistered legal entity may enforce a contract.[4]

**a.    The Parties' Positions**

---

[4]    Both the Plaintiffs and InterCoast cite Maine caselaw to support the positions in their memoranda, *see Pls.' Opp'n* at 8; *Def.'s Reply* at 10, and at oral argument, both acknowledged that Maine contract law controls. *Stenzel*, 2005 ME 37, ¶ 7, 870 A.2d 133 (where a contract involves interstate commerce, the FAA ordinarily preempts state law; however, in deciding whether an arbitration clause is enforceable in the first place, courts apply state contract law principles"). Moreover, as a federal court sitting in diversity, this Court must provide its "best guess" as to open questions of state law. *See Noonan v. Staples, Inc.*, 556 F.3d 20, 30 (1st Cir. 2009) (citing *Liberty Mutual Ins. Co. v. Metro. Life Ins. Co.*, 260 F.3d 54, 65 (1st Cir. 2001)). However, the Court is also cognizant that it "must tread lightly in offering interpretations of state law where controlling precedent is scarce." *Id.* (citing *Gill v. Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d 391, 402 (1st Cir. 2005)).

The Plaintiffs claim that "[t]here is no evidence that either InterCoast Career Institute" or the entity for which it claims to have been a 'd/b/a,' 'InterCoast Colleges' [] ever has been validly organized as a corporation" and that it cannot enforce the Enrollment Agreements. *Pls.' Opp'n* at 7. The Plaintiffs contend while Inter-Coast International Training, Inc., "appears to be a California corporation," the Enrollment Agreements do not refer to InterCoast's formal corporate name, and they claim there is no indication that the Plaintiffs otherwise dealt with Inter-Coast International Training, Inc. *Id.* at n.7. At oral argument, they disputed InterCoast's characterization that InterCoast Career Institute or InterCoast Colleges was a d/b/a of Inter-Coast International Training, Inc., in light of its prior corporate disclosure statements.

InterCoast replies that the fact that it signed the Enrollment Agreements under its trade name—"InterCoast Career Institute"—rather than its corporate name—"Inter-Coast Internal Training Inc."—does not undermine the validity of the Enrollment Agreements "because a party may be sued under its own name or the name it chooses to use in transactions, and the use of such a name does not invalidate a contract." *Def.'s Reply* at 7-8 (internal quotation marks omitted) (quoting *Pickering*, 827 F. Supp. 2d at 1015-16). InterCoast says while the Plaintiffs may have incorrectly named "InterCoast Colleges" and not "Inter-Coast International Training, Inc." as the Defendant, they understood that they were dealing with a corporate entity and that "InterCoast Career Institute" was its trade name. *Id.* at 8. Additionally, InterCoast argues that the Plaintiffs' allegations show that they entered the

Enrollment Agreements with "the InterCoast corporate entity," illustrating they were aware with whom they were contracting when they signed the Enrollment Agreements and brought this suit. *Id.* at 8-9 (citing *Compl.* ¶¶ 117-120, 123).

### b. InterCoast's Prior Corporate Disclosures and Inter-Coast International Training, Inc.'s Registration

Inter-Coast International Training, Inc., has been a registered and incorporated corporation under the laws of California since 1994.[5] Inter-Coast International Training, Inc., is therefore a legal entity capable of entering into a contract. Moreover, while neither InterCoast Colleges nor the InterCoast Career Institute was registered to do business in Maine, Inter-Coast International Training, Inc. was so registered until August 2016, when the Maine Secretary of State revoked its authority to conduct business as a foreign corporation within Maine. *O'Meara Dec.*, Ex. B. (ECF No. 23-5); *Def.'s Reply* at 7 n.4. All the Enrollment Agreements were entered into before 2016, when Inter-Coast International Training, Inc., was registered to conduct business in Maine.

The Plaintiffs sued "InterCoast Colleges, d/b/a InterCoast Career Institute". *See Compl.* The Plaintiffs allege that "InterCoast Colleges . . . is a California corporation that operates for-profit . . . . In Maine, InterCoast did business under the name of InterCoast Career Institute." *Id.* ¶ 6. In its Corporate Disclosure Statement,

---

[5]    *See* Cal. Sec. of State, Entity Number C1748993, https://www.sos.ca.gov. The Plaintiffs concede this point in their opposition memorandum. *Pls.' Opp'n* at 7 n.7 ("Inter-Coast International Training, Inc. appears to be a California corporation"). In fact, they allege the same in their Complaint, albeit referring to InterCoast Colleges, not Inter-Coast International Training Inc. *Compl.* ¶ 6 ("InterCoast Colleges . . . is a California corporation that operates for-profit post-secondary educational programs. . ..").

dated November 28, 2017, InterCoast stated:

> "Defendant Intercoast Colleges, d/b/a Intercoast Career Institute states that it is owned by Inter-Coast International Training, Inc. There are no other owners, or any publicly held corporation owning 10% or more of its stock."

*Corporate Disclosure I.* In December 2014, in *Mason v. InterCoast Career Institute*, 2:14-cv-00377-JAW, InterCoast disclosed[6]:

> "1. It does not have a parent corporation; 2. There is no publicly held corporation owning 10% or more of the stock of Defendant Intercoast Career Institute."

*Def.'s Corporate Disclosure Statement* (ECF No. 10) (*Corporate Disclosure II*). On September 28, 2017, in *Perez-Webber v. InterCoast Career Institute*, 2:16-cv-00196-JAW, InterCoast disclosed that:

> "It does not have a parent corporation; 2. There is no publicly held corporation owning 10% or more of the stock of Defendant Intercoast Career Institute."

*Def.'s Corporate Disclosure Statement* (ECF No. 47) (*Corporate Disclosure III*).

In *Mason v. InterCoast Career Institute*, 2:14-cv-00377-JAW, Geeta Brown, the President of InterCoast, submitted a declaration in support of InterCoast's motion for summary judgement, and stated that "Intercoast Career Institute ("InterCoast") a private closely held California Corporation which previously operated a private-for-profit Vocational Nursing School in Kittery, Maine from approximately December, 2010 to May 2015 . . .." *Decl. of Geeta A. Brown, President of InterCoast Career*

---

[6] "This Court may take judicial notice of a fact that is not subject to dispute in that it is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Wilson v. Bodnar*, 750 F. Supp. 2d 186, 188 (D. Me. 2010) (quoting *United States v. Bello*, 194 F.3d 18, 23 (1st Cir. 1999)).

*Institute, in Support of Def.'s Mot. for Summ. J.* (ECF No. 71-1) (*Brown Decl. I*).  In

*Perez-Webber v. InterCoast Career Institute*, 2:16-cv-00196-JAW, Ms. Brown gave

another declaration in support of InterCoast's motion for summary judgment, and

stated "I am the Corporate President of the InterCoast Career Institute ("InterCoast")

a private for profit California Corporation which previously operated a Practical

Nursing Program in Kittery, Maine . . .." *Decl. of Geeta A. Brown in Support of Def.'s

Mot. for Summ. J.* (ECF No. 62) (*Brown Decl. II*).

### c.    Standing to Enforce Enrollment Agreements

Under Maine law, mutual assent means the parties agree to "be bound by all

its material terms, the assent is either expressly or impliedly manifested in the

contract, and the contract is sufficiently definite to enable the court to ascertain its

exact meaning and fix exactly the legal liabilities of each party." *Sullivan,* 2004 ME

134, ¶ 13, 861 A.2d 625.  "For a contract to be enforceable, the parties thereto must

have a distinct and common intention which is communicated by each party to the

other." *Searles v. Trustees of St. Joseph's Coll.*, 1997 ME 128, ¶ 13, 695 A.2d 1206.

(internal quotation marks omitted) (quoting 17A AM. JUR. 2D CONTRACTS § 27 (1991)).

To support their argument that a nonexistent legal entity cannot enforce a

contract, the Plaintiffs cite *International Sport Divers Association v. Marine Midland

Bank, N.A.*, 25 F. Supp. 2d 101 (W.D.N.Y. 1998).  *Pls.' Opp'n* at 7.  There a court in

the Western District of New York concluded that under Connecticut State law, a

"nonexistent corporation does not have the legal capacity to make a contract," and

that under New York State law, there must be two determinate parties to have a

contract. *Int'l Sport Divers Ass'n*, 25 F. Supp. 2d at 112.

InterCoast cites *South Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc.*, 183 F. Supp. 3d 197, 210–11 (D. Mass. 2016), where a district court noted, under Massachusetts State law, a corporation may use a trade name to enter into contracts, so long as it does not do so fraudulently. *Def.'s Reply* at 8. Neither case, however, speaks to how this question should be resolved under Maine law.

The Maine Business Corporate Act, 13-C M.R.S. §§ 101 *et seq.*, provides a framework of laws for corporations in Maine. Sections of 1501 through 1510 of the Maine Business Corporate Act concerns foreign corporations conducting business in Maine. Section 1502(5) states:

> Notwithstanding subsections 1 and 2 [which provide foreign corporations or their successors cannot maintain a proceeding in Maine State court without proper filing], the failure of a foreign corporation to file an application for authority does not impair the validity of its corporate acts, including contracts, or prevent it from defending any proceeding in this State.

The Maine Business Corporate Act also discusses what assumed and fictitious names a corporation may use (§§ 401-04, 1506) when conducting business in Maine; these sections do not, however, state that noncompliance invalidates otherwise valid corporate acts.

In *Lipman v. Thomas*, 143 Me. 270, 272-74, 61 A.2d 130, 131-32 (1948), the Maine Law Court discussed 31 M.R.S. §§ 1 *et seq.*,—which outlines regulations that sole proprietors and partnerships engaged in mercantile enterprises must follow in operating in the state of Maine—and stated the purpose of that statute was "to enable persons dealing with individuals transacting business under a partnership or

assumed name to know or be able to ascertain from a public record, the name or names of those with whom they are dealing and the nature of the business in which they are engaged." In *Lipman*, the Law Court wrote:

> The statute [M.R.S., Chap. 167, §§ 4, 8], does not disclose directly or by implication that it was the intention of the Legislature to invalidate business transactions otherwise valid because of the failure of the plaintiffs to comply with its provisions. The statue does not declare the transaction void. It does not forbid doing business before complying with its provisions. It does not forbid recovery. It does not provide for forfeiture. "The prohibition of the statute extends to the use of a name not his own. It does not extend to the business done or contract made."

143 Me. at 274, 61 A.2d at 132 (quoting *Segal v. Fylar*, 89 Conn. 293, 296, 93 A. 1027 (1915)); *see also In re Reben*, 342 A.2d 688, 694 (Me. 1975) (citing *Lipman*, 143 Me. at 272, 61 A.2d at 131) (recognizing that a business may adopt an assumed name and may legally obligate itself into agreements binding on other parties).

It is not clear whether InterCoast properly registered its trade name to conduct business in Maine before its authority to operate as a foreign corporation was revoked in August 2016. However, even assuming InterCoast did not, its noncompliance does not mean the contract between InterCoast Career Institute/InterCoast Colleges (neither of which was formally registered or incorporated in Maine) and the Plaintiffs is unenforceable as a matter of law.[7] *See* 8 RICHARD LORD, WILLISTON ON CONTRACTS § 19:68 (4th ed. 2000) (summarizing that many states have trade name statutes requiring businesses to register their trade names before conducting business in that

---

[7]    This conclusion does not bar the Plaintiffs from raising questions about the validity of the contract before the arbitrator. Also, it is an open question for the arbitrator whether this arbitration clause permits aggregation of the students' claims. *See Dunn v. Dunn*, 318 F.R.D. 652, 679 (M.D. Ala. 2016).

respective state, and that states either expressly deny unregistered businesses the right to enforce contracts "but [that] the great weight of authority supports" the business's right to enforce the contract).

### 2. Unconscionability

A claim that the arbitration clause itself is unconscionable, as opposed to a claim that a contract as a whole was fraudulently induced, is a matter for the Court to adjudicate because it "challenges to the substance of the clause itself." *Sleeper Farms*, 211 F. Supp. 2d at 201 (citing *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 53 (1st Cir. 2002)). The Plaintiffs argue the arbitration clauses in the Enrollment Agreements are unconscionable because: (1) of being "inconspicuously split between page 5 and the top of page 6" of the Enrollment Agreements; (2) the lack of notice to the material terms and waiver of rights within the arbitration provision; (3) the clauses incorporate arbitration provisions from other enrollment materials not brought to the attention of the Plaintiffs. *Pls.' Opp'n* at 8-9. Collectively, these arguments contend the arbitration clauses are substantively unconscionable. At oral argument, the Plaintiffs also raised the prospect that the arbitration clauses are procedurally unconscionable because the Plaintiffs were allegedly targeted and that for some of the Plaintiffs, English is their second language.

While it is InterCoast's burden to compel arbitration, the Plaintiffs have the burden to establish unconscionability. *Bose Corp. v. Ejaz*, 732 F.3d 17, 23 (1st Cir. 2013) ("Unconscionability is an affirmative defense") (citing *E.H. Ashley & Co., Inc.*

*v. Wells Fargo Alarm Servs.*, 907 F.2d 1274, 1278 (1st Cir. 1990)).[8]  Maine recognizes "a broad presumption in favor of arbitration."  *Barrett v. McDonald Invs., Inc.*, 2005 ME 43, ¶ 15, 870 A.2d 146.  The Law Court "has not ruled on an unconscionability challenge to an . . . arbitration provision under Maine law."  *Brackett v. Gen. Dynamics Armament*, No. CIV. 10-176-P-H, 2010 WL 2628525, at *2 (D. Me. Jun. 25, 2010) (citing *Barrett*, 2005 ME 43, ¶ 21 n.4, 870 A.2d 146); *see also Garcia v. MaineGeneral Health*, 1:18-cv-00019-NT, 2018 U.S. Dist. LEXIS 197437, at *9-10 (D. Me. Nov. 20, 2018).  Yet, "[t]he Maine cases on contractual unconscionability outside of arbitration. . .  set a high hurdle to overcome."  *Brackett*, 2010 WL 2628525, at *2, (quoting *Bither v. Packard*, 98 A. 929, 933 (Me. 1916) (unconscionability equates to "fraud," or when the contract is "grossly against conscience," "or grossly unreasonable and oppressive")).

There are two different types of unconscionability: procedural and substantive.  *Blanchard v. Blanchard*, 2016 ME 140, ¶ 19, 148 A.3d 277 (citing *Barrett*, 2005 ME 43, ¶¶ 32–33, 870 A.2d 146 (Alexander, J., concurring)).  The former looks at the circumstances in which the contract was entered into and generally concerns unequal bargaining power between the parties.  *Id.* (citation omitted).  The latter looks at the terms of the contract and inequity to one party.  *Id.* (citation omitted).  Here, the Plaintiffs primarily make a substantive unconscionability challenge as they complain about the terms—or the lack thereof—and the location of the arbitration clause within the Enrollment Agreements.  However, at oral argument, the Plaintiffs also

---

[8]     At oral argument, the Plaintiffs conceded that it is their burden to establish unconscionability.

argued that the clauses are procedurally unconscionable.

### a.  Substantive Unconscionability

The Plaintiffs cite *Cullinane v. Uber Technologies, Inc.*, 893 F.3d 53 (1st Cir. 2018) to support their claim that the arbitration clauses are unconscionable and that InterCoast has not met its burden to compel arbitration.  In *Cullinane*, the First Circuit looked to Massachusetts law to determine whether an online arbitration clause was enforceable. 893 F.3d at 61-62.  In that case, Uber made its "Terms and Conditions"—the agreement in dispute—available during the registration process through a series of hyperlinks.  *Id.* at 59.  Getting to the agreement was quite tedious and inconspicuous for users.  The user had to click on one "Terms of Service & Privacy Policy" hyperlink to get to two more hyperlinks entitled "Terms & Conditions" and "Privacy Policy" and then click the "Terms & Conditions" hyperlink itself to read the agreement.  *Id.*  Uber also did not require users to access the agreement before completing their registration.  *Id.*  The First Circuit followed the reasoning of *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 987 N.E.2d 604 (2013), where the issue was the validity of a forum selection clause as part of an online contract.  *Id.* at 61.  The *Ajemian* Court placed the burden on Yahoo! to show that the forum selection clause was reasonably communicated and accepted.  83 Mass. App. Ct. at 574, 987 N.E. 2d at 611.

In contrast, here, the Plaintiffs have the burden to show unconscionability. The facts of *Cullinane* are also distinguishable.  In *Cullinane*, Uber did not claim the plaintiffs read the arbitration clause or "even clicked on the Terms of Services &

Privacy Policy button." 893 F.3d at 62 (internal quotation marks omitted). Rather, Uber argued the plaintiffs acquiesced to the arbitration clause because they had been given notice and a link to arbitration terms. *Id.* Here, InterCoast contends the Plaintiffs read the Enrollment Agreements as confirmed by their respective signatures. *Def.'s Reply* at 10; *see Def.'s Mot.* Attach. 2, *Kourembanas Enrollment Agreement* at 1-6 (*Kourembanas Agreement*); Attach. 3, *Baptiste Enrollment Agreement* at 1-6 (*Baptiste Enrollment Agreement*); Attach. 4, *Mande Enrollment Agreement* at 1-6 (*First Mande Enrollment Agreement*); Attach. 5, *Mande Enrollment Agreement* at 1-5 (*Second Mande Enrollment Agreement*);[9] and Attach. 6, *Valley Enrollment Agreement* at 1-6 (*Valley Enrollment Agreement*). Each Plaintiff signed the Enrollment Agreement on the last page and initialed each page at the bottom and specifically initialed certain provisions within the Enrollment Agreement. *Id.*

Under Maine law, "parties to a contract are deemed to have read the contract and are bound by its terms." *BlueTarp Fin., Inc. v. Melloul Blamey Const. S.C., Ltd.*, 846 F. Supp. 2d 307, 313 (D. Me. 2012) (quoting *Francis v. Stinson*, 2000 ME 173, ¶ 42, 760 A.2d 209). Although the First Circuit analyzed arbitration clauses in *Cullinane*, it did not evaluate the clauses for unconscionability, but whether there was assent to the terms of the arbitration clause. 893 F.3d at 61, 64.

As to the placement of the arbitration clause, in some of the Enrollment Agreements, the arbitration clause is split between the fifth and sixth pages, the first

---

[9] The last name in the first Cathy Mande Enrollment Agreement seems to be Mande. *First Mande Enrollment Agreement* at 1, 6. However, in the second Cathy Mande Enrollment Agreement, the name appears to be Manote. *Second Mande Enrollment Agreement* at 1.

half of the clause appears right above where each Plaintiff placed initials.  *See Kourembanas Agreement* at 5-6; *Baptiste Agreement* at 5-6; *First Mande Enrollment Agreement* at 5-6; *Valley Enrollment Agreement* at 5-6.  The exception is the second Cathy Mande Enrollment Agreement, where the arbitration clause appears in full on the fifth page.  *Second Mande Enrollment Agreement* at 5.  The fact that the arbitration clauses lack language about waiving rights and about costs associated with arbitration, and does not define "disputes" to include  legal disputes or claims does not render the clauses unconscionable.  These omissions do not "shock the conscience." *Barrett*, 2005 ME 43, ¶ 36, 870 A.2d 146 (Alexander, J., concurring) ("Substantive unconscionability or unfairness focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience").  The fact that the arbitration clause also incorporates the "Arbitration provision found elsewhere in InterCoast Career Institute enrollment materials," *see Pls.' Enrollment Agreements*, does not show the clause is grossly oppressive.  While the Plaintiffs say InterCoast has not demonstrated that it made them aware of this additional information, it is the Plaintiffs' burden to show unconscionability.  Although the inclusion of this language undercuts InterCoast's contention that this arbitration "is nearly identical" to the arbitration clause to the arbitration clause in *Champagne*, 2006 ME 58, ¶ 3, 897 A.2d 803, its inclusion does not conversely render it unconscionable.  The Court concludes the arbitration clause contained in the Enrollment Agreements is not substantively unconscionable.

### b.    Procedural Unconscionability

The Court also concludes the arbitration clause contained in the Enrollment Agreements is not procedurally unconscionable. "Procedural unconscionability is analyzed based on the circumstances that existed at the time the contract was adopted." *Blanchard*, 2016 ME 140, ¶ 19, 148 A.3d 277. Courts consider such factors as "the exploitation of unequal bargaining power between the parties," *id.* (citing *Am. Airlines v. Wolens*, 513 U.S. 219, 249 (1995)), as well as whether sharp practices were employed, the use of fine print and complex language, and the lack understanding of one party. *Id.* (citing *Barrett*, 2005 ME 43, ¶ 32, 870 A.2d 146 (Alexander, J., concurring)); *see also Bordetsky v Charron*, No. BCD-RE-10-8, 2011 WL 4528211, at *4 (Bus. & Consumer Ct. Aug. 16, 2011, *Horton, J.*) (procedural unconscionability means "such unconscionableness or inadequacy in a bargain as to demonstrate some gross imposition or some undue influence").

The Plaintiffs say the arbitrations clauses are procedurally unconscionable because for some of the Plaintiffs, English is their second language, InterCoast targeted them, and there was unequal bargaining power between the parties. They say the clauses are unconscionable in light of the totality of the circumstances. Given that it is the Plaintiffs' burden to show unconscionability, on the record before it, the Court concludes that the Plaintiffs have not sustained their burden. Looking at the time and circumstances when the Enrollment Agreements were entered into, the record lacks sufficient indicia to show that the Enrollment Agreements were the result of "exploitation" or "undue influence." While the Plaintiffs say they were targeted, only one Plaintiff, Catherine Valley, learned of InterCoast through its

advertising campaign soliciting students. *Compl.* ¶ 90. The remaining Plaintiffs either learned of InterCoast on their own initiative or a friend referred them to InterCoast. *Id.* ¶¶ 63, 74, 82. Although as a corporation, InterCoast likely had more bargaining power, that is not enough by itself to constitute procedural unconscionable. RESTATEMENT (SECOND) OF CONTRACTS § 208, comment d (unequal bargaining power not alone enough to set aside unfavorable contract terms). To the degree the Plaintiffs are arguing that the arbitration clauses were adhesion agreements, this argument is belied by the fact that the Court has not been presented with "some element of overreaching by a party who exploits a vastly unequal bargaining position." *Brower v. ADT LLC*, No. 2:15-cv-00337-JAW, 2016 WL 4919884, at *8 (D. Me. Sept. 14, 2016) (internal quotation marks omitted) (quoting *Wausau Mosinee Paper Corp. v. Magda*, 366 F. Supp. 2d 212, 221 (D. Me. 2005)). The Court concludes that the arbitration clauses are not procedurally unconscionable.

## C.    Remaining Factors for a Motion to Compel Arbitration

The Plaintiffs do not contend that their claims against InterCoast fall outside the scope of the arbitration clause or that InterCoast waived its right to arbitrate. The Court therefore concludes that InterCoast has met the two remaining factors in deciding whether to grant a motion to compel arbitration. The Court concludes that the Plaintiffs claims against InterCoast are arbitrable and grants InterCoast's motion to compel arbitration.[10]

---

[10]    The Court is disquieted by the result here. To enforce an arbitration clause in a contract between clearly equal parties, such as two businesses, seems only proper because they must live with what they agreed to and could have struck a different bargain. Here, where one party is a business engaged in for-profit education and the other is a prospective student, the balance of power rests

## D. Dismissal or Stay

The remaining issue is whether the Court should dismiss or stay the action. InterCoast asks the Court to dismiss the case. *Def.'s Mot.* at 8. Courts in the First Circuit retain the discretion to dismiss or stay a case when the issues before a court are arbitrable. *Garcia*, 2018 U.S. Dist. LEXIS 197437, at *16 (citing *Baker v. Securitas Sec. Servs. USA, Inc.*, 432 F. Supp. 2d 120, 127 (D. Me. 2006) (citing *Bercovitch*, 133 F.3d at 156 n.21 (1st Cir. 1998))). This Court previously observed that "dismissal has several advantages." *Baker*, 432 F. Supp. 2d at 127. The *Boulet* Court summarized the advantages of dismissal:

---

heavily with the school and it strikes the Court as harsh to hold the student to an arbitration clause in an enrollment agreement, particularly one waiving the student's right to bring or participate in a class action lawsuit.

But the Court concluded that the recent authority from the United States Supreme Court and the Court of Appeals for the First Circuit compels a different result and this Court owes its allegiance to their rulings. For example, in *Epic Systems Corporation v. Lewis*, 138 S. Ct. 1612 (2018), the United States Supreme Court enforced an arbitration agreement between an employer and its employees and ruled that the employees could not bring collective or class actions against the employer. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013) (merchants compelled to individually arbitrate claims against a credit card company and were not allowed to pursue class action); *Rivera-Colón v. AT&T Mobility P.R., Inc.*, 913 F.3d 200 (1st Cir. 2019).

There are just a few exceptional situations where a district court may "loosen the iron grip of *stare decisis.*" *United States v. Reveron Martinez*, 836 F.3d 684, 687 n.2 (1st Cir. 1988). One is where the district court concludes that there has been "considerable landscaping" that has changed the "contours of the law," since the latest pronouncements of the Supreme Court or First Circuit. *Gately v. Massachusetts*, 811 F. Supp. 26, 31 (D. Mass. 1992), *aff'd* 2 F.3d 1221 (1st Cir. 1993). But this is not the case here.

Encouraged by its view of the congressional intent in favor of arbitration underlying the FAA, the Supreme Court has adopted a favorable view of arbitration. Yet particularly in the context of consumer transactions, these rulings have been criticized. *See DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 471-78 (2015) (Ginsburg J., dissenting); Judith Resnik, *Fairness in Numbers: A Comment on* AT&T v. Concepcion, Wal-Mart v. Dukes, *and* Turner v. Rogers, 125 HARV. L. REV. 78, 112 (2011) (quoting *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 163, 113 P.3d 1100, 1110 (2005), *abrogated by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ("[I]n a consumer contract of adhesion [when] . . . disputes . . . involve small amounts of damages . . . the waiver [of a class action] becomes in practice the exemption of the party 'from responsibility for [its] own fraud'")). Class-action suits are premised partly on the hope of "facilitat[ing] access to courts for those who lacked the resources or the knowledge that they had possibly been harmed." *Resnik, supra* note 10, at 134 (discussing 1966 amendments to FED. R. CIV. P. 23). In light of recent interpretations of the FAA and Rule 23, the Court must rule based on the law as it is, not what it thinks the law should be.

> Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner provided by law. This course of action will also make the arbitrability issue immediately appealable and avoid the litigation expenses and delay if the arbitration conducted were vacated by a later appeal.

*Boulet*, 324 F. Supp. 2d at 127 (quoting *Bangor Hydro-Electric Co.*, 62 F. Supp. 2d at 161 n.9). The Plaintiffs have not raised a potential statute of limitations issue that could recommend against dismissal. *Baker*, 432 F. Supp. 2d at 127 (staying action pending arbitration because the parties raised a potential statute of limitations question). Consistent with district precedent, the Court concludes dismissal is appropriate.

## V. CONCLUSION

The Court GRANTS Defendants' Motion to Compel Arbitration and Dismiss the Case (ECF No. 7). The Court DISMISSES without prejudice Plaintiffs' Complaint (ECF No. 1) and GRANTS Defendant's motion to compel arbitration.


SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of February, 2019